# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CHRISTOPHER J. BAKER, et al.,**

    **Plaintiffs,**

v.

**SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, et al.,**

    **Defendants.**

Case No. 2:17-cv-909
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendant Swift Transportation Co. of Arizona's ("Swift") Partial Motion to Dismiss (ECF No. 13). For the following reasons, that Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.

On February 13, 2017, Plaintiff Christopher J. Baker ("Baker") was driving westbound on Interstate 70 in a semi-tractor trailer owned by his employer, Defendant UPS Ground Freight, Inc. ("UPS"). (Compl. ¶ 8, ECF No. 1.) One of Defendant Swift's drivers, Theodore A. Stocker, III ("Stocker"), was also driving a semi-tractor trailer westbound on Interstate 70. (*Id.*) Baker alleges that Stocker rear-ended several stopped or slowed vehicles while traveling at approximately 70 miles per hour. (*Id.*) The collision caused a chain-reaction, and one of the vehicles rear-ended by Stocker struck Baker's semi-tractor trailer. (*Id.*) There were no physical indications that Stocker applied his brakes prior to impact. (*Id.*)

Stocker was killed in the accident. (Compl. ¶ 9.) Baker survived but alleges that, as a result of the collision, he suffered brain damage; seizures; injuries to his eye, head, chest, neck,

back, right shoulder, and right arm; and substantial property damage. (*Id.* ¶¶ 1, 12.)

Baker has sued Swift and UPS. (Compl. at 1.) He alleges seven causes of action: (1) vicarious liability for Stocker's actions; (2) strict liability for Stocker's actions; (3) negligence; (4) statutory violations; (5) punitive damages; (6) spoliation of evidence; and (7) declaratory judgment. (*Id.* at 5–11.) Baker brings the first six causes of action against only Swift. (*Id.* at 5–10.) He brings the seventh cause of action against only UPS. (*Id.* at 10–11.)

Swift moves to dismiss Counts 2, 3, and 5 in its current Motion. (Partial Mot. to Dismiss at 1, ECF No. 13.)[1]

## II.

Under Federal Rule of Civil Procedure 12(b)(6), a court will dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). An action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). When deciding a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The court may consider the complaint and any attached exhibits, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss as long as the exhibits are referenced in the complaint and are central to the plaintiff's claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

---

[1] Eric Rose and Julie Rose are the other Plaintiffs in this case. (*See* Mar. 13, 2018 Order at 1, ECF No. 20; Rose Compl. at 1, ECF No. 1 in Case No. 3:17-cv-391.) Swift's Partial Motion to Dismiss is not directed at their claims.

2

A complaint will survive a motion to dismiss if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### A. Strict Liability (Count 2)

Arguing that the Federal Motor Carrier Safety Regulations (FMCSRs), 49 C.F.R. Part 390, do not create an independent cause of action for strict liability against a motor carrier and that Baker's strict liability claim (Count 2) is duplicative of his vicarious liability claim, Swift moves to dismiss the strict liability claim. (Partial Mot. to Dismiss, at 8–9, ECF No. 13.) Swift's arguments have merit.

In Count 2, labeled "Strict Liability of Defendant Swift," Baker alleges that Swift is responsible for Stocker's actions because Swift "is the registered owner of the USDOT number 54283 displayed on the tractor-trailer involved in this collision." (Compl. ¶ 24, ECF No. 1.) Baker elaborates on this claim in his Response to the Partial Motion to Dismiss:

> Under the Federal Motor Carrier Safety Regulations (FMCSRs), the rules contained in 49 CFR §§ 350 through 399 ("Subchapter B") "are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce. In addition, every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated.

3

> Mr. Stocker violated Ohio Revised Code § 4511.21 when he failed to keep an assured clear distance between his semi tractor-trailer and the line of commercial[] motor vehicles stopped on Interstate Route 70. And because Mr. Stocker was driving a commercial motor vehicle owned by Swift, and he was operating in the course and scope of his employment, Swift is responsible for his actions because it is the duty of all motor carriers to ensure all of the drivers they place on the roads comply with all laws and regulations. This is so because every driver and employee shall be instructed regarding, <u>and shall comply with</u>, all applicable regulations contained in the FMCSRs. This is Swift's responsibility, which it did not meet.
>
> Plaintiff is not arguing that some sort of "strict liability" standard applies to the commercial motor vehicle collision itself, as Swift alleges in its motion to dismiss. Rather, Plaintiff alleges that, because Swift is the registered owner of the semi tractor-trailer Mr. Stocker was driving when he barreled into the line of commercial vehicles stopped on the highway, it is responsible for Mr. Stocker's acts. This is confirmed by the FMCSRs.

(Resp. at 13–14, ECF No. 14 (footnotes omitted).)

To the extent Baker argues that, under the FMCSRs, Swift is vicariously liable for Stocker's negligence, Baker's strict liability claim is duplicative of his vicarious liability claim and will be dismissed. *See BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, No. 2:11-cv-274, 2012 WL 3283397, at *3 (S.D. Ohio Aug. 10, 2012) ("[I]t is axiomatic that [plaintiff] cannot assert two separate counts alleging the exact same claims." (quoting *Smith v. Bd. of Trs. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 899 (N.D. Ohio 2010))). And to the extent Baker argues that Swift is strictly liable for Stocker's conduct (i.e., liable irrespective of whether Stocker acted negligently), Baker's claim also fails.

Strict liability is "[l]iability that does not depend on actual negligence or intent to harm, but that is based on the breach of an absolute duty to make something safe." Black's Law Dictionary 454 (4th pocket ed. 2011); *see also Rich v. Ohio Underground*, 2d Dist. Montgomery No. 12777, 1991 WL 270659, at *6 (Dec. 16, 1991) ("Strict liability is imposed on A when he or she engaged in an extraordinarily hazardous activity that causes injury to B, notwithstanding the

4

lack of negligence on the part of A."). To plead a strict liability claim under Ohio law, a plaintiff must allege that the defendant "carries on an abnormally dangerous activity" and that the plaintiff suffered "harm . . . resulting from that activity." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 639 (N.D. Ohio 2014) (quoting Restatement (Second) of Torts § 519 (Am. Law Inst. 1977)). An activity is abnormally dangerous if it "cannot be maintained without injury to property, no matter what care is taken." *Id.* (quoting *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St. 3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 59); *see also Rich*, 1991 WL 270659, at *6 (contrasting the use of explosives for excavation (an abnormally dangerous activity) with the operation of an ammonia pipeline (not an abnormally dangerous activity)).

Baker has not alleged any facts from which the Court can plausibly infer that operating a trucking company is an abnormally dangerous activity that cannot be conducted without injury to property, no matter what care is taken. Nor has Baker offered in his Response any legal basis for the notion that the FMCSRs hold carriers strictly liable for the conduct of their employees operating commercial motor vehicles. The FMCSRs are applicable "to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce," 49 C.F.R. § 390.3(a), and mandate that "[e]very driver and employee involved in motor carrier operations . . . be instructed regarding, and . . . comply with, all applicable regulations" concerning commercial motor vehicle operation, *id.* § 390.3(e)(2). When the FMCSRs prescribe a duty or impose a prohibition on a driver, it is "the duty of the motor carrier to require observance of such duty or prohibition." *Id.* § 390.11. The FMCSRs, however, do not mention strict liability or mandate that a carrier be held liable for an employee's conduct irrespective of whether the employee acted negligently or was otherwise at fault. *See Greene v. Toyota Motor Corp.*, No. 3:11-cv-207, 2014 WL 12575959, at *4 n.4 (N.D. Tex. May 5, 2014) ("To the extent

5

Plaintiffs suggest that Fayard may be held strictly liable for alleged violations of the FMCSR, this argument fails."); *Harris v. MVT Servs., Inc.*, No. 1:06CV251, 2007 WL 2609780, at *1 (S.D. Miss. Sept. 5, 2007) ("Violation of the FMCSR does not, in and of itself, create a cause of action for an injured plaintiff.").

Given that Baker's strict liability claim is insufficiently pleaded, legally unfounded, duplicative of Baker's vicarious liability claim, or all three, Baker's strict liability claim (Count 2) is dismissed.

**B.    Negligence (Count 3)**

Swift next moves to dismiss Baker's negligence claim (Count 3). (*See* Partial Mot. to Dismiss at 5–8, ECF No. 13.) Baker alleges that Swift was negligent in hiring, instructing, training, supervising, and retaining Stocker and in entrusting him with a commercial vehicle. (Compl. ¶¶ 26–29, ECF No. 1.) Swift contends that Baker's claim fails because it contains no factual allegations indicating that Stocker's conduct was foreseeable to Swift. (Partial Mot. to Dismiss at 7–8.) The Court agrees.

A negligent hiring, supervision, or entrustment claim has five elements under Ohio law: (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5) the employer's negligence in hiring, supervising, or entrusting the employee as the proximate cause of the plaintiff's injuries. *Bush v. Am. Honda Motor Co.*, 227 F. Supp. 2d 780, 801 (S.D. Ohio 2002); *Ford v. Brooks*, 10th Dist. Franklin No. 11AP-664, 2012-Ohio-943, ¶ 22. Embedded in these elements are the basic components of a negligence claim: duty, breach, proximate cause, and damages. *See Shoemaker-Stephen v. Montgomery Cty. Bd. of Comm'rs*, 262 F. Supp. 2d 866, 886–87 (S.D. Ohio 2003);

6

*Simpkins v. Grace Brethren Church of Delaware*, 2014-Ohio-3465, 16 N.E.3d 687, ¶ 34 (5th Dist.). "The existence of an employer-employee relationship imposes a duty upon the employer to prevent foreseeable injury to others by exercising reasonable care to refrain from employing an incompetent employee." *Simpkins*, 2014-Ohio-3465, ¶ 34. Thus, "if an employer, without exercising reasonable care, employs an incompetent person in a job that brings him in contact with others, then the employer is subject to liability for any harm the employee's incompetency causes." *Abrams v. Worthington*, 169 Ohio App. 3d 94, 2006-Ohio-5516, 861 N.E.2d 920, ¶ 14 (10th Dist.). An employee's act is foreseeable "if the employer knew or should have known of the employee's 'propensity to engage in similar criminal, tortuous, or dangerous conduct.'" *Armbruster v. Hampton*, 9th Dist. Lorain No. 05CA008716, 2006-Ohio-4530, ¶ 24 (quoting *Armaly v. City of Wapakoneta*, Third Dist. Auglaize No. 2-05-45, 2006-Ohio-3629, ¶ 54).

A negligent hiring, supervision, or entrustment claim will survive a motion to dismiss only if the plaintiff "plead[s] facts which indicate that the individual hired had a past history of criminal, tortious, or otherwise dangerous conduct about which the [employer] knew or could have discovered through reasonable investigation." *Byrd v. Faber*, 565 N.E.2d 584, 590 (Ohio 1991); *see Jones v. Praxair, Inc.*, No. 3:15-cv-277, 2016 WL 3582128, at *2–4 (S.D. Ohio June 28, 2016). "The mere incantation of the elements of a negligent hiring claim, *i.e.,* the abstract statement that the [employer] knew or should have known about the employee's criminal or tortious propensities, without more is not enough." *Byrd*, 565 N.E.2d at 590; *see Jones*, 2016 WL 3582128, at *2–4. Nor can a plaintiff rely on the alleged incident itself to establish that the employee's conduct was foreseeable to the employer. *See Jones*, 2016 WL 3582128, at *2.

Here, Baker has failed to plead facts from which the Court can plausibly infer that Stocker's conduct was foreseeable to Swift. Baker alleges that

7

> Defendant Swift's actions demonstrate a conscious disregard for the rights and safety of Christopher J. Baker and the rest of the motoring public, acting with reckless indifference to the consequences to others despite being aware of its conduct and knowing there was a great probability of causing substantial harm.

(Compl. ¶ 35.) But Baker does not allege any facts to support the assertion that Stocker had engaged in, or had a propensity to engage in, criminal, tortious, or otherwise dangerous conduct. Nor does Baker allege facts to support the assertion that Swift knew about, or should have known about, any problematic aspect of Stocker's behavior or driving record before the incident.

It would be reasonable to infer, Baker states in his Response, that Swift was "'generally aware' of its drivers' speed and other safety violations on the road." (Resp. at 12, ECF No. 14.) But even if the Court were to draw this inference and assume that Swift was generally aware of Stocker's driving speed and driving record, the Court would still find that Baker's negligence claim is insufficiently pleaded: Baker has not alleged facts from which the Court can plausibly infer that Stocker had a driving record that would have made the incident at issue foreseeable.

Baker asks the Court to draw other inferences too: that Stocker had driven more hours than were permitted under applicable federal law; that Stocker's delivery was time sensitive; and that Swift encouraged Stocker to deliver or reach a destination in a particular time window. (Resp. at 12.) When deciding a motion to dismiss, a court "must draw all reasonable inferences in the favor of [the] non-moving party." *Kavanagh v. Lodge Care Ctr., Inc.*, No. 1:12-cv-864, 2013 WL 1915090, at *2 (S.D. Ohio May 8, 2013). The Court, however, can only draw inferences from well-pleaded facts. *See Iqbal*, 556 U.S. at 678–79. And here, Baker's Complaint is devoid of well-pleaded facts from which the Court can draw the inferences proposed by Baker.

Lastly, Baker implies that his negligence claim lacks supporting factual allegations because he has not yet had an opportunity to obtain discovery from Swift. (*See* Resp. at 12–13.) But as this Court has explained, a lack of access to evidence does not excuse insufficient

allegations. *Jones*, 2016 WL 3582128, at *4. A plaintiff is "not entitled to conduct post-filing discovery to uncover the facts necessary to support a cause of action." *Id.* (citing *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011)).

Because Baker has not sufficiently pleaded his negligence claim (Count 3), that claim is dismissed.

## C.    Punitive Damages (Count 5)

Swift also moves to dismiss Baker's request for punitive damages (Count 5) because Baker has purportedly failed to assert any factual allegations indicating that Swift acted with actual malice or engaged in any other conduct that would justify the imposition of such damages. (*See* Partial Mot. to Dismiss, at 3–5, ECF No. 13.) Baker argues, in response, that Swift's attempt to dismiss the punitive damages request is premature and should not be decided until at least after discovery because, under Ohio law, a request for punitive damages is not a stand-alone cause of action but, rather, a prayer for relief not appropriate for dismissal under Rule 12(b)(6). (*See* Resp. at 5–6, ECF No. 14.) However, if the Court chooses to address Swift's argument now, the punitive damages request should survive, Baker argues, because it is supported by sufficient factual allegations. (*See id.* at 6–10.)

Ohio law does not recognize a stand-alone cause of action for punitive damages. *Reber v. Lab. Corp. of Am.*, No. 2:14-cv-2694, 2015 WL 7076608, at *3 (S.D. Ohio Nov. 13, 2015). This is because punitive damages are simply a remedy for other claims and "are awarded as an incident of the cause of action in which they are sought." *Raftery v. S. Lee Corp.*, No. 2:07-cv-649, 2007 WL 4085289, at *2 (S.D. Ohio Nov. 15, 2007) (citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994)).

9

Under Ohio law, a plaintiff may only recover punitive damages if the "actions or omissions of [the] defendant demonstrate malice or aggravated or egregious fraud, or [the] defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." O.R.C. § 2315.21(C)(1); *see Parker v. Miller*, No. 2:16-cv-1143, 2017 WL 3642372, at *3 (S.D. Ohio Aug. 24, 2017). Malice (referred to as "actual malice" by Ohio courts) is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Freudeman v. Landing of Canton*, 702 F.3d 318, 330 (6th Cir. 2012) (quoting *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987)). "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Villella v. Waikem Motors, Inc.*, 543 N.E.2d 464, 467 (Ohio 1989). Mere negligence cannot justify an award of punitive damages. *Preston*, 512 N.E.2d at 1176.

An employer is not liable for punitive damages merely because an employee undertook actionable conduct while acting within the scope of his employment. *Boyd v. Smith*, No. 2:12-cv-814, 2014 WL 1050080, at *10 (S.D. Ohio Mar. 14, 2014); *see also Estate of Beavers*, 2008-Ohio-2023, ¶¶ 44–45. Rather, punitive damages may be imposed on an employer for the actions of its employee only where (1) the employer's own actions demonstrated malice or aggravated or egregious fraud or (2) the employer, as principal, knowingly authorized, participated in, or ratified actions or omissions of its employee. *Boyd*, 2014 WL 1050080, at *10; *MacNeil v. Wyatt*, 917 F. Supp. 2d 726, 732 (S.D. Ohio 2013); *see Estate of Beavers v. Knapp*, 175 Ohio App. 3d 758, 2008-Ohio-2023, 889 N.E.2d 181, ¶ 45.

And contrary to Baker's assertion, a court may dismiss a request for punitive damages under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support the request. *Parker*, 2017 WL 3642372, at *3 (dismissing a request for punitive damages under Rule 12(b)(6) where the "allegations [did] not provide facts from which a factfinder could infer malice"); *Reber*, 2015 WL 7076608, at *5 ("Courts have clearly held that a claim for punitive damages cannot survive if a plaintiff only requests such damages in a prayer for relief without supporting the pleading with factual content that, if proven, would warrant punitive damages."). This Court, in fact, recently dismissed a request for punitive damages in a case involving similar facts to those presented here. *Parker*, 2017 WL 3642372, at *3. In *Parker v Miller*, the plaintiff was seated inside of a stopped police cruiser on Interstate 70 when a tractor-trailer driven by one of the defendant trucking company's employees struck the cruiser at nearly 70 mph without stopping or changing lanes prior to impact. *Id.* at *1. Alleging vicarious liability, strict liability, state and federal regulatory violations, and negligent hiring, training, instruction, supervision, and entrustment, the plaintiff sought punitive damages from the defendant trucking companies. *Id.* To obtain punitive damages under Ohio law, an employer must knowingly authorize or participate in the malicious actions of its employee, the Court explained. *Id.* at *3. And because the plaintiff did not allege facts from which a factfinder could infer that the defendant trucking companies knew that the driver would maliciously crash into the police cruiser, the Court dismissed the request for punitive damages. *See id.*

Here, Baker has not alleged facts from which the Court can plausibly infer that Swift's own actions demonstrated malice or aggravated or egregious fraud regarding the collision or that Swift knowingly authorized, participated in, or ratified Stocker's conduct of rear-ending vehicles at 70 miles per hour. Baker relies on his allegation that

> Defendant Swift's actions demonstrate a conscious disregard for the rights and safety of Christopher J. Baker and the rest of the motoring public, acting with reckless indifference to the consequences to others despite being aware of its conduct and knowing there was a great probability of causing substantial harm.

(Compl. ¶ 35, ECF No. 1.) Baker, however, offers no factual allegations indicating what actions Swift took that purportedly demonstrated its conscious disregard or reckless indifference.

Baker's punitive damages request survives dismissal though to the extent that it is tied to his spoliation of evidence claim. Baker alleges that Swift intentionally destroyed documents and data relevant to this case, including the semi-tractor trailer's original owner's manual; the semi-tractor trailer's maintenance records; Stocker's hours-of-service records; Stocker's historical driver performance data; videos and images from a LytxDriveCam or similar driver monitoring device; videos and images of Stocker or the semi-tractor trailer's cabin; videos and images of the road in front of the semi-tractor trailer before the collision; and Swift's communications with Stocker. (Compl. ¶ 38.) Swift destroyed these documents and data, Baker alleges, despite receiving letters of preservation in February 2017 and subsequent emails and telephone calls indicating that litigation was probable. (*Id.* ¶ 40.) Given that the destruction of evidence allegedly occurred after Swift received preservation letters and learned of Baker's potential lawsuit, the Court can plausibly infer that Swift maliciously spoliated evidence. *Cf. Abbott v. Marshalls of MA, Inc.*, Eighth Dist. Cuyahoga No. 87860, 2007-Ohio-1146, ¶¶ 25, 31–38 (upholding an award of punitive damages on a spoliation of evidence claim where the evidence showed that defendant's employee intentionally and maliciously taped over security camera footage of the incident at issue despite a store policy mandating that surveillance tapes of suspected shoplifting be preserved for litigation purposes). And consequently, Baker may proceed with the portion of the punitive damages request (Count 5) tied to his spoliation claim.

## III.

For these reasons, Swift's Partial Motion to Dismiss (ECF No. 13) is **GRANTED IN PART** and **DENIED IN PART**. Baker's strict liability and negligence claims (Counts 2 and 3) are **DISMISSED**. Baker's punitive damages request (Count 5) survives to the extent that it is tied to his spoliation of evidence claim. The punitive damages request is otherwise **DISMISSED**.

**IT IS SO ORDERED.**

_5-4-2018_
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**